**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Garcia,  Plaintiff,  v.  Commissioner of Social Security Administration,  Defendant. | No. CV-22-00065-TUC-MSA  **ORDER** |

Plaintiff Aaron Garcia seeks judicial review of an unfavorable decision issued by the Commissioner of Social Security Administration. The matter has been fully briefed. For the following reasons, the Commissioner's decision will be affirmed.

## Background

Plaintiff is 30 years old. (*See* AR 194.) He has a GED. (AR 225.) He has experience working in restaurants taking orders, waiting on customers, preparing food, and cleaning. (AR 248–53.) He alleges that he is disabled because of various mental disorders, including posttraumatic stress disorder, depression, and anxiety. (AR 28, 224, 236.) According to Plaintiff, these conditions affect his memory and ability to socialize, understand, and concentrate. (AR 241.) He testified that he has about ten "bad days" per month, during which he cannot focus on anything besides his fear, flashbacks, and nightmares. (AR 31.) He reported that his conditions also cause him to neglect his personal hygiene. (AR 236.)

In 2019, Plaintiff filed applications for disability insurance benefits and supplemental security income. (AR 194, 201.) The applications were denied initially and

on reconsideration. (AR 35, 45, 91–92.) Plaintiff requested a hearing before an administrative law judge (ALJ), and a hearing was held in November 2020. (AR 26–34, 119.)

After the hearing, the ALJ issued a written decision following the five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.[1] At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (AR 15.) At step two, the ALJ found that Plaintiff had three medically determinable impairments: posttraumatic stress disorder, anxiety disorder, and bipolar disorder. (AR 15.) However, the ALJ found that those impairments were not severe, either alone or in combination. (AR 15.) The ALJ therefore concluded that Plaintiff was not disabled. (AR 19.)

The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (AR 1–3.) This lawsuit followed.

**Legal Standard**

The Commissioner's decision will be affirmed if it is supported by substantial evidence and free of legal error. *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996)). "Substantial evidence . . . is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (alteration in original) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

**Discussion**

Plaintiff challenges the ALJ's decision on two grounds. He argues that the ALJ erred in finding he does not have a severe impairment or combination of impairments. He also argues that the ALJ erred in rejecting his symptom testimony. Plaintiff's symptoms are relevant to whether his impairments are severe, 20 C.F.R. § 404.1529(d)(1), so these arguments will be addressed in reverse. As discussed below, neither argument has merit.

---

[1] The regulations for disability insurance benefits are similar in substance to the regulations for supplemental security income. For ease of reference, further citations will be only to the former.

**I.      Symptom Testimony**

Plaintiff reported that he had a poor memory, neglected his personal hygiene, had difficulty socializing, concentrating, and understanding, and had about ten "bad days" per month where he was consumed by fear, flashbacks, and nightmares. The parties agree that the ALJ could discount these reports only for "specific, clear and convincing reasons." *Smith v. Kijakazi*, 14 F.4th 1108, 1112 (9th Cir. 2021) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). This standard is satisfied so long as "the ALJ's rationale is clear enough that it has the power to convince," even if it is not particularly convincing to the Court. *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

An ALJ may discount testimony on the ground that it is inconsistent with the objective medical evidence. *Id.* at 498. Here, the ALJ identified inconsistencies between Plaintiff's testimony and (1) his treatment records and (2) the medical-opinion evidence. *See id.* at 497–98 (holding the ALJ properly relied on inconsistencies between the claimant's testimony and treatment records); *Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (per curiam) (holding the ALJ properly relied on an inconsistency between the claimant's testimony and a medical opinion). Those inconsistencies are a clear and convincing reason for discounting Plaintiff's testimony.

First, the treatment records. The ALJ observed that, in August 2018 (when Plaintiff's records begin), Plaintiff's psychological presentation was appropriate and pleasant, and he was alert and oriented. (AR 17, 298.) The ALJ found, with supporting citations, that Plaintiff presented similarly at later appointments. (AR 17.) For instance, the ALJ cited an April 2019 treatment note indicating that Plaintiff had denied anxiety and depression. (AR 17, 355.) At the same appointment, Plaintiff was alert and oriented and had a PHQ-2 score of 0, indicating that he was not depressed. (AR 355–56.)

The ALJ found that while Plaintiff was observed with symptoms in July 2019, he remained cooperative and engaged in treatment. (AR 17.) On July 24, Plaintiff reported a history of depression and difficulty socializing, keeping a job, and maintaining his hygiene. (AR 362.) Even so, as the ALJ noted, Plaintiff had an appropriate mood and affect, and he

maintained good eye contact. (AR 17, 362, 365.) Plaintiff also denied anxiety and depression during that appointment. (AR 365.) On July 31, Plaintiff presented with poor hygiene, poor memory, and a suspicious and defensive demeanor. (AR 371.) He also had a PHQ-9 score of 9, indicating moderate depression, and a GAD-7 score of 7, indicating mild anxiety. (AR 376–77.) The ALJ noted that Plaintiff was nevertheless cooperative, polite, and engaged with good eye contact. (AR 17, 371.)

The ALJ found that, after July 2019, Plaintiff's mental status was "benign" for more than one year. (AR 17.) This was a rational interpretation of the record. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). In August and September, Plaintiff reported struggling with depression, anxiety, anger, antisocial behavior, and hygiene concerns, but he generally presented with no symptoms or mild symptoms, and he was always attentive, alert, and engaged. (AR 382 (on August 5, Plaintiff had a flat mood but was attentive, alert, and engaged); AR 383, 385 (on August 12, Plaintiff had a calm demeanor and was attentive, alert, talkative, and engaged with good eye contact); AR 386 (on August 19, Plaintiff appeared worried but was attentive, alert, and engaged with good eye contact); AR 388 (on September 6, Plaintiff had a relaxed posture, smiled and laughed appropriately, and was attentive, alert, and engaged); AR 389 (on September 16, Plaintiff had a somber expression and slumped posture but was attentive, alert, talkative, and engaged); AR 390 (on September 23, Plaintiff reported doing well, had a relaxed posture, and was attentive, alert, and talkative).)

Plaintiff presented similarly in early October. (AR 395–96 (on October 3, Plaintiff had an unremarkable mental status examination and had a PHQ-9 score of 1, indicating minimal depression); AR 397 (on October 7, Plaintiff had a slumped posture and low tone of voice, but he reported doing well and was attentive, alert, talkative, and engaged).) In mid-October, Plaintiff appeared upset and reported he had had a bad week. (AR 398.) Nevertheless, he knew that his emotional state was temporary, and he was talkative and willing to listen. (AR 398.) Plaintiff reported improvement during the remainder of

October. (AR 399 (on October 21, Plaintiff reported doing better, had good posture, and was attentive, alert, talkative, and engaged); AR 400 (on October 30, Plaintiff reported feeling well, reported stable symptoms, and was engaged).)

In early November, Plaintiff reported being sad for half a day because of recent nightmares and a lack of sleep, but he was willing and engaged during his appointment. (AR 401.) Over the next few weeks, he reported improvement in his mood. (AR 402 (on November 14, despite appearing tired and having a slumped posture, Plaintiff reported feeling better, reported a desire to socialize more, and was attentive, alert, and engaged); AR 403 (on November 18, Plaintiff reported feeling very well and was attentive, alert, and engaged with good eye contact).) On November 23, Plaintiff went to the emergency room because of a severe panic attack, and, a few days later, he appeared anxious during an appointment. (AR 301, 404.) Nevertheless, he was attentive, alert, and engaged, and he reported a decrease in depression. (AR 404–05.)

In December, Plaintiff's presentation was largely unremarkable. (AR 406 (on December 2, Plaintiff reported doing well despite continued issues with sleeping, and he was attentive, alert, talkative, and engaged); AR 407 (on December 9, Plaintiff reported feeling well because he had been sleeping better, had a relaxed posture, and was attentive, alert, talkative, and engaged with good eye contact); AR 414–15 (on December 19, Plaintiff reported that therapy was helping a lot, and that he was improving at coping with his anxiety); AR 499 (on December 20, Plaintiff was stressed because of his in-laws but felt at ease knowing the stress was temporary, and he was attentive, alert, talkative, and engaged with good eye contact); AR 500 (on December 26, Plaintiff reported being well, reported stable symptoms, and was engaged); AR 501 (on December 27, Plaintiff reported being well, had a relaxed posture, and was attentive, alert, talkative, and engaged with good eye contact); AR 502 (on December 30, Plaintiff reported having a stable mood despite external stressors, had a relaxed posture, and was attentive, alert, talkative, and engaged with good eye contact).)

In early January 2020, Plaintiff reported that he had slept only 14 hours over the

past three days because of nightmares and flashbacks, and he appeared tired with a slumped posture. (AR 507.) The following day, he had a PHQ-9 score of 13, indicating moderate depression. (AR 509.) Even so, he reported feeling less hatred towards himself, he was cooperative and attentive, and his judgment and insight were only minimally impaired. (AR 507, 510.)

Over the next several months, although Plaintiff continued to report symptoms, he consistently presented with no symptoms or mild symptoms. (AR 527 (on January 21, Plaintiff reported being well, had a relaxed posture, and was attentive, alert, talkative, and engaged); AR 524, 526 (on January 27, Plaintiff reported a clearer mind, less anxiety, and fewer nightmares and flashbacks, and he was attentive, alert, talkative, and engaged with good eye contact); AR 521–22 (on January 30, Plaintiff denied anxiety and depression and had a PHQ-2 score of 0, indicating no depression); AR 519 (on February 3, Plaintiff reported doing very well, reported less anxiety and depression, and was attentive, alert, talkative, and engaged with good eye contact); AR 518 (on February 12, Plaintiff reported doing well with his medications and coping skills, had a relaxed posture, and was attentive, alert, talkative, and engaged); AR 517 (on February 18, Plaintiff reported being well despite having received bad news, agreed to attend therapy less often due to his good progress, and was attentive, alert, talkative, and engaged with good eye contact); AR 591 (on March 5, Plaintiff was anxious and had a PHQ-9 score of 6, indicating mild depression, but he was cooperative and had only minimally impaired judgment and insight); AR 549 (on March 24, Plaintiff reported he was very happy with his progress on his anxiety); AR 582–83 (on May 13, Plaintiff denied anxiety and depression and was alert and oriented).)

As the ALJ noted, Plaintiff's presentation did not become worse until late 2020. (AR 17.) In August 2020 (ten months after his date last insured), he had a PHQ-9 score of 22, indicating severe depression. (AR 576.) He had a flat affect and appeared anxious, depressed, withdrawn, irritable, and sad. (AR 576, 579.) Still, he had logical and coherent thought content, intact thought processes, good attention and concentration, and only

minimally impaired judgment and insight. (AR 579.) In late October, Plaintiff reported severe anxiety and depression, and his judgment and insight were moderately to severely impaired. (AR 587–88.) Even so, he was cooperative and had good attention and concentration. (AR 588.) Plaintiff's treatment records end in December 2020. At that time, he presented as anxious and irritable with moderately to severely impaired judgment and insight. (AR 563–64.) Nevertheless, he was cooperative and had fair attention and concentration. (AR 563.)

The ALJ also found that the record was inconsistent with Plaintiff's testimony that he neglected his hygiene. (AR 17.) That finding is supported by substantial evidence. As the ALJ observed, Plaintiff presented with poor hygiene only rarely. (AR 371 (on July 31, 2019, Plaintiff "appeared to be with poor hygiene").)[2] At most of his appointments, he was observed as "well groomed," "appropriately groomed," or "casually" dressed. (AR 346 (August 9, 2018); AR 351 (December 14); AR 360 (May 30, 2019); AR 386 (August 19); AR 387 (August 26); AR 388 (September 6); AR 389 (September 16); AR 390 (September 23); AR 392 (September 30); AR 396 (October 3); AR 397 (October 7); AR 399 (October 21); AR 402 (November 14); AR 403 (November 18); AR 404 (November 25); AR 406 (December 2); AR 407 (December 9); AR 499 (December 20); AR 500 (December 26); AR 501 (December 27); AR 505 (December 30); AR 507 (January 6, 2020); AR 510 (January 7); AR 530 (January 14); AR 528 (January 21); AR 524 (January 27); AR 519 (February 3); AR 518 (February 12); AR 517 (February 18); AR 591 (March 5); AR 567 (March 10); AR 582 (May 13); AR 572 (July 8); AR 579 (August 26); AR 563 (December 14).) Similarly, Plaintiff appears to have been assessed for poor memory only once. (AR 371 (July 31, 2019).) The other assessments were normal. (AR 323 (September 5, 2019); AR 306 (December 4).)

The ALJ chronicled Plaintiff's course of treatment and, with citation to representative examples, rationally concluded that Plaintiff's treatment records were inconsistent with his reports of severe and pervasive symptoms. Plaintiff argues that the

---

[2] From the Court's review of the record, this appears to be the only occasion where a provider observed Plaintiff with poor hygiene.

- 7 -


ALJ's analysis is flawed because it ignores that mental impairments are characterized by symptoms that wax and wane. *See Garrison*, 759 F.3d at 1017. It is true that "it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Id.* The ALJ here, however, did not rely on a few isolated instances of improvement. Instead, the ALJ found that Plaintiff rarely had more than mild limitations. That finding was rational. It must be upheld even if Plaintiff's interpretation of the evidence is also rational. *Burch*, 400 F.3d at 679.

Second, the medical-opinion evidence. The state-agency physicians opined that Plaintiff did not have a severe impairment or combination of impairments. (AR 41, 64, 75, 86.) The ALJ found those opinions persuasive because they were "well supported with citations to objective evidence in the record." (AR 18; *see* AR 73–76.) As explained above, the ALJ reasonably found the record to be inconsistent with Plaintiff's alleged symptoms. Clearly, it was rational for the ALJ to rely on trained physicians who reached the same conclusion about the same evidence.

Plaintiff disputes that the ALJ relied on the agency opinions. He says that because unfavorable agency opinions are present in "virtually every case and an ALJ is required . . . to discuss them, absent language specifically tying these opinions to claimant testimony, their presence as an object of discussion in an Unfavorable Decision can hardly be seen as analysis specifically intended to undermine symptom testimony." The Court disagrees. The ALJ's decision must be read in its full context. *See Smartt*, 53 F.4th at 498. The ALJ found that the longitudinal record showed Plaintiff rarely experienced more than mild limitations. The ALJ then found the opinions "consistent with" that understanding of the evidence, and thus "persuasive." It is reasonable to infer that the ALJ's treatment of Plaintiff's testimony was based in part on those relevant, consistent, and persuasive opinions. *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (noting federal courts may make reasonable inferences about an ALJ's reasoning).

Plaintiff also argues that the ALJ could not reject his symptom testimony without

considering other evidence, namely, that he consistently reported the same symptoms over the course of his treatment. The Commissioner attacks this reasoning as "circular," saying that the Court should not accept Plaintiff's symptom testimony as true simply because it is consistent with statements he has made in the past. The consistency of the claimant's self-reports is a relevant factor. SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25, 2017). Still, as the Commissioner points out, ALJs are not "'required to believe every allegation of disabling [symptoms], or else disability benefits would be available for the asking, a result plainly contrary to' the Social Security Act." *Smartt*, 53 F.4th at 499 (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). Here, the ALJ was not required to accept Plaintiff's self-reports, as those reports were inconsistent with the longitudinal evidence. The Court rejects Plaintiff's claim of error.

## II. Severity of Impairments

"[T]he step-two inquiry is a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54 (1987)). To pass step two, the claimant must have at least one severe impairment. 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting SSR 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting SSR 85-28, 1985 WL 56856, at *3).

The ALJ must follow a "special technique" when evaluating the severity of a mental impairment. 20 C.F.R. § 404.1520a. Using a five-point scale—none, mild, moderate, marked, and extreme—the ALJ must rate the degree to which the impairment limits the claimant's ability to (1) "understand, remember, or apply information," (2) "interact with others," (3) "concentrate, persist, or maintain pace," and (4) "adapt or manage" himself. *Id.* § 404.1520a(c). When the claimant has either no limitations or mild limitations in these

four areas, the ALJ "will generally conclude that [his] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [his] ability to do basic work activities." *Id.* § 404.1520a(d)(1).

Here, the ALJ rationally found that Plaintiff had a mild limitation in each functional area. (AR 18.) That finding is supported by the longitudinal record, which, as discussed in the preceding section, indicates that Plaintiff generally presented with no symptoms or mild symptoms. He was attentive, alert, and engaged; he was cooperative; he was well groomed; he had intact and logical thought processes; he learned and successfully implemented coping skills; not infrequently, he denied anxiety and depression and reported improvement in his mental condition; and, even when he presented with symptoms, his judgment and insight were only minimally impaired. Given Plaintiff's mild limitations, the ALJ could rationally find that Plaintiff's impairments were non-severe. 20 C.F.R § 404.1520a(d)(1).

The finding is also supported by the state-agency physicians' opinions that Plaintiff lacked a severe mental impairment. *See Chaudhry v. Astrue*, 688 F.3d 661, 670 (9th Cir. 2012) (affirming the ALJ's reliance on opinion evidence to find the claimant's mental disorder non-severe). Notably, Plaintiff fails to challenge the ALJ's evaluation of the opinion evidence, and there is no contrary medical opinion in the record. *Cf. Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (reversing the ALJ's non-severe finding where "[e]very doctor who saw Schink diagnosed him with bipolar disorder or a comparable personality disorder and opined that it significantly affected his mood, affect, and ability to interact with others," and "[n]o state doctor disputed this diagnosis"). The Court rejects Plaintiff's claim of error.

**IT IS ORDERED** that the Commissioner's decision is **affirmed**. The Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 11th day of May, 2023.

Honorable Maria S. Aguilera
United States Magistrate Judge